UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/17

BODRUL ISLAM, UZZOL SIDDIKY and
ASHRAF AHMED, on behalf of themselves
and on behalf of other similarly-situated
individuals,

Plaintiffs,

- against -

BYO CO. (USA), LTD. d/b/a EN
JAPANESE BRASSERIE,

Defendant.

**MEMORANDUM
OPINION & ORDER**

16 Civ. 927 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this putative collective action, Plaintiffs Bodrul Islam, Ashraf Ahmed, and

Uzzol Siddiky assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et

seq., and New York Labor Law §§ 190 et seq., on behalf of themselves and all others similarly

situated, for failure to pay the statutory minimum wage and for improperly retaining gratuities.

Plaintiffs Islam and Ahmed have moved the court to authorize notice to potential opt-in plaintiffs

pursuant to 29 U.S.C. § 216(b).[1]

For the reasons stated below, Plaintiffs' motion for court-authorized notice will be

denied.

**BACKGROUND**

On February 5, 2016, Plaintiffs Islam, Ahmed, and Siddiky brought suit on behalf

of themselves and others similarly situated against their former employer, BYO Co. (USA), Ltd.,

---

[1] Plaintiffs style their motion as one for "conditional certification," but "neither the FLSA nor
the Federal Rules of Civil Procedure provide for the certification of an FLSA collective action."
Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 462 n.1 (S.D.N.Y. 2008). This
Court will treat Plaintiffs' motion as a request for the Court to authorize notice to potential opt-in
plaintiffs.

which owns and operates EN Japanese Brasserie ("EN"), a restaurant in Manhattan. (Cmplt. (Dkt. No. 1) ¶ 1) The Complaint alleges that tipped workers – including servers, bartenders, bussers, and runners – were not paid in compliance with the statutory minimum wage. (Id. ¶ 3) Instead, Plaintiffs contend that they were compensated at a lower tip-credited rate, and that Defendant forced them to pool their tips with workers who did not regularly and customarily perform tipped duties. (Id. ¶¶ 3, 14-15)

Islam, Ahmed, and Siddiky all worked as bussers at EN. (Islam Decl. (Dkt. No. 29-2) ¶ 2; Ahmed Decl. (Dkt. No. 29-3) ¶ 2; Siddiky Decl. (Dkt. No. 29-4) ¶ 2) Islam states that he was employed by EN from May 2014 to July 2015. (Islam Decl. (Dkt. No. 29-2) ¶¶ 2-3) Ahmed says that he was employed by EN from April 2015 to June 2015. (Ahmed Decl. (Dkt. No. 29-3) ¶¶ 2-3) And Siddiky claims that he worked at EN from January 2014 until June 2015. (Siddiky Decl. (Dkt. No. 29-4) ¶¶ 2, 30) As bussers, all three Plaintiffs cleared used dishes, glasses, and utensils from tables, reset tables with clean dinnerware, refilled water glasses, and provided other services to customers. (Islam Decl. (Dkt. No. 29-2) ¶¶ 4-5; Ahmed Decl. (Dkt. No. 29-3) ¶ 4; Siddiky Decl. (Dkt. No. 29-4) ¶¶ 3-4)

All three Plaintiffs state that EN forced them to participate in a tip pool in which they "received tips from the same pool of cash and credit cards, based on a point system that corresponded to our positions." (Siddiky Decl. (Dkt. No. 29-4) ¶¶ 11-12; accord Islam Decl. (Dkt. No. 29-2) ¶ 12; Ahmed Decl. (Dkt. No. 29-3) ¶¶ 12-13) "Distributions from the tip pool were recorded on a document called a 'tip sheet,'" which "list[s], as categories of employees receiving a portion of the tip pool," bussers, servers, runners, and bartenders. (Siddiky Decl. (Dkt. No. 29-4) ¶¶ 13-14; see also Islam Decl. (Dkt. No. 29-2) ¶ 12; Ahmed Decl. (Dkt. No. 29-3) ¶ 12) Employees in these positions received an allotment from the tip pool "in addition to an

hourly wage from the Restaurant that was a subminimum wage tip credit rate." (Islam Decl.

(Dkt. No. 29-2) ¶ 13; accord Ahmed Decl. (Dkt. No. 29-3) ¶ 13; Siddiky Decl. (Dkt. No. 29-4)

¶ 15)

Plaintiffs further allege that the tip pool includes "expeditors" and "polishers."

(Islam Decl. (Dkt. No. 29-2) ¶¶ 14-15, 18-20, 25; Ahmed Decl. (Dkt. No. 29-3) ¶¶ 15-16, 19-21,

26-27; Siddiky Decl. (Dkt. No. 29-4) ¶¶ 17, 20-22, 27, 29) According to Plaintiffs, expeditors

work "exclusively in and around the kitchen area" as "liaison[s] between the kitchen staff and

Runners to make sure that food is properly plated and at the right temperature, and that food

orders are not mixed up or forgotten." (Islam Decl. (Dkt. No. 29-2) ¶¶ 23-24; accord Ahmed

Decl. (Dkt. No. 29-3) ¶¶ 24-25; Siddiky Decl. (Dkt. No. 29-4) ¶ 25-26) "Polishers' primary

duties and responsibilities were to polish glassware and dishware, which was performed out of

the view of customers, in a space behind the kitchen," although sometimes "[p]olishers would

also be tasked with making outside food deliveries, on bicycles." (Siddiky Decl. (Dkt. No. 29-4)

¶¶ 18, 23; accord Islam Decl. (Dkt. No. 29-2) ¶¶ 16, 21; Ahmed Decl. (Dkt. No. 29-3) ¶¶ 17, 22)

Plaintiffs state that polishers and expeditors never work in the main dining area and do not

interact with customers. (Islam Decl. (Dkt. No. 29-2) ¶¶ 17, 19, 24; Ahmed Decl. (Dkt. No. 29-

3) ¶¶ 18, 20, 25; Siddiky Decl. (Dkt. No. 29-4) ¶¶ 19, 21, 26)

Plaintiffs further contend, however, that Defendant never "employ[ed] a full-time

Polisher or Expeditor." (Islam Decl. (Dkt. No. 29-2) ¶ 22; Ahmed Decl. (Dkt. No. 29-3) ¶ 23;

Siddiky Decl. (Dkt. No. 29-4) ¶ 24) Instead, "the Restaurant would rotate a Busser to perform

the Polisher position, but would nonetheless pay that person tips from the tip pool." (Islam Decl.

(Dkt. No. 29-2) ¶¶ 18-19 ("An employee would typically be made aware that he or she would be

required to rotate in as a Polisher for their whole shift by seeing the word 'polisher' written next

to their name on nightly floor plan, or by seeing some other notation indicating that they would be working as a Polisher that shift."); Ahmed Decl. (Dkt. No. 29-3) ¶ 19 ("Nightly, a Busser would be rotated by the Restaurant to perform the Polisher position, but would nonetheless be paid tips from the tip pool."); Siddiky Decl. (Dkt. No. 29-4) ¶ 20 ("Each night, the Restaurant would rotate a Busser to perform the Polisher position, but would nonetheless pay that person tips from the tip pool."); Cmplt. (Dkt. No. 1) ¶ 16 ("Defendant would rotate a Busser each night to perform Polisher work and pay them tips, and rotate Runners to work as Expeditors and pay them tips").

Plaintiffs contend that (1) polishers and expeditors are not eligible to participate in the tip pool; (2) the tip pool is invalid because of their participation; and (3) the "subminimum wage tip credit rate" paid by Defendant violates the FLSA. (Pltf. Br. (Dkt. No. 28) at 12)

Plaintiffs now seek leave to disseminate notice of the instant lawsuit to a putative collective consisting of "front of house service staff, including Servers, Bussers, Runners, [and] Bartenders[,] . . . who regularly and customarily receive tips from patrons or customers." ((Dkt. No. 27); Pltf. Br. (Dkt. No. 28) at 6) Defendant opposes the motion, arguing that Plaintiffs have not made the required showing that Defendant has a common unlawful policy or that the proposed representative Plaintiffs are similarly situated to other potential opt-in plaintiffs. (Def. Opp. (Dkt. No. 30) at 6-7)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Legal Standard for Dissemination of Court-Authorized Notice

Under the FLSA, an employee may sue on behalf of himself and all other employees who are "similarly situated." 29 U.S.C. § 216(b). Similarly situated employees may "'opt in'" to an FLSA litigation and "become party plaintiffs by filing a written consent with the

4

court." Damassia v. Duane Reade, Inc., No. 04 Civ. 8819(GEL), 2006 WL 2853971, at *2

(S.D.N.Y. Oct. 5, 2006) (citing Masson v. Ecolab, Inc., No. 04 Civ. 4488 (MBM), 2005 WL

2000133, at *13 (S.D.N.Y. Aug. 17, 2005) (citing 29 U.S.C. § 216(b))). In contrast to class

actions under Federal Rule of Civil Procedure 23, in FLSA collective actions, "'only plaintiffs

who affirmatively opt in can benefit from the judgment or be bound by it." Id. (citing Gjurovich

v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 103-04 (S.D.N.Y. 2003)).

 "Although they are not required to do so by [the] FLSA, district courts 'have

discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential

plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented

plaintiffs." Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010) (quoting Hoffmann–La

Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)) (alteration in Myers); see also Hoffmann v.

Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("It is well settled that district courts have

the discretionary power to authorize the sending of notice to potential class members in a

collective action brought pursuant to § 216(b) of the FLSA." (citations omitted)). Moreover,

because the filing of an FLSA collective action does not toll the three-year statute of limitations

as to non-named potential plaintiffs, courts routinely approve court-authorized notice in order to

ensure that potential claimants understand their rights and the erosion of their claims as time

passes. See, e.g., Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 Civ.

265(PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012) ("[C]ourt-authorized notice is

appropriate[] to prevent erosion of claims due to the running statute of limitations . . . .").

 "In determining whether to exercise this discretion in an 'appropriate case[]' the

district courts of this Circuit appear to have coalesced around a two-step method . . . . The first

step involves the court making an initial determination to send notice to potential opt-in plaintiffs

who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Myers, 624 F.3d at 554-55 (citations omitted); see also Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)).  Where a plaintiff meets his or her burden to demonstrate that the proposed recipients are in fact "similarly situated," the court authorizes that notice be sent to these potential opt-in plaintiffs.  See Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).

"The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 554-55 (quoting Sbarro, 982 F. Supp. at 261); see also Amendola, 558 F. Supp. 2d at 467.  The "modest factual showing" requirement is met where plaintiffs offer "'substantial allegations' of a factual nexus between [them] and potential opt-in plaintiffs with regard to their employer's alleged FLSA violation." Davis v. Abercrombie & Fitch Co., No. 08 Civ. 1859(PKC), 2008 WL 4702840, at *9 (S.D.N.Y. Oct. 23, 2008) (quoting Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9078(RMB)(RLE), 2004 WL 2978296, at *5 (S.D.N.Y. Dec. 21, 2004)) (citing Mendoza v. Casa de Cambio Delgado, Inc., No. 07 Civ. 2579(HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008)).

While "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions,'" Myers, 624 F.3d at 555 (quoting Dyback v. State of Fla. Dep't of Corr., 942 F.2d 1562, 1567 (11th Cir. 1991), "it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated plaintiffs do in fact exist,'" id. (citing Sbarro, 982 F. Supp. at 261) (emphasis in original).  "Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one," and that determination may be modified or vacated after discovery. Lee v. ABC Carpet & Home,

236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citing <u>Realite v. Ark Rests. Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). "'[T]he burden is so low that even one or two affidavits establishing the common plan may suffice." <u>Bittencourt v. Ferrara Bakery & Cafe Inc.</u>, 310 F.R.D. 106, 115 (S.D.N.Y. 2015) (quoting <u>Jeong Woo Kim v. 511 E. 5th St., LLC</u>, 985 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2013)); <u>accord</u> <u>Warman v. Am. Nat'l Standards Inst.</u>, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (citing <u>Hernandez v. Bare Burger Dio Inc.</u>, No. 12 CIV. 7794 RWS, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (conditional certification granted based solely on named plaintiff's declaration)); <u>see also</u> <u>Khamsiri</u>, 2012 WL 1981507, at *1 (approving conditional collective certification based on single plaintiff's affidavit "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, <u>inter alia</u>, paid less than the statutory minimum wage and not paid overtime pay").

When evaluating whether court-authorized notice is appropriate, "the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations." <u>Davis</u>, 2008 WL 4702840, at *9 (citing <u>Lynch v. United Servs. Auto. Ass'n</u>, 491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007)); <u>see also</u> <u>Francis v. A&E Stores, Inc.</u>, No. 06 Civ. 1638 (CS)(GAY), 2008 WL 4619858, at *2 (S.D.N.Y. Oct. 15, 2008) ("Plaintiffs must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law,' but the merits of plaintiff's claims are not evaluated until later in the litigation." (quoting <u>Sbarro</u>, 982 F. Supp. at 261-62)). Indeed, in considering such a motion, "[a] court need not evaluate the underlying merits of a plaintiff's claims . . . ." <u>Damassia</u>, 2006 WL 2853971, at *3 (citing <u>Scholtisek v. Eldre Corp.</u>, 229 F.R.D. 381, 391 (W.D.N.Y. 2005); <u>Gjurovich</u>, 282 F. Supp. 3d at 105; <u>Sbarro</u>, 982 F. Supp. at 262).

Because courts do not weigh the merits of a plaintiff's claim, extensive discovery is not necessary at the notice stage. See Masson, 2005 WL 2000133, at *15 (noting that defendant's stated need for "extensive" discovery does "not bear on whether this case can proceed as a collective action").

### B. Law Concerning Tip Pooling and Tip Credit Applied Towards the Minimum Wage Requirement

Under the FLSA, covered employers are required to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). "If an employee 'customarily and regularly receives more than $30 a month in tips,' however, the FLSA permits the employer to claim a tip credit of up to $5.12 per hour and pay a reduced minimum wage of as little as $2.13 per hour. . . ." Azeez v. Ramaiah, No. 14 CIV. 5623 PAE, 2015 WL 1637871, at *4 (S.D.N.Y. Apr. 9, 2015) (quoting 29 U.S.C. § 203(m), 203(t)). While the FLSA does not "prohibit the pooling of tips among employees who customarily and regularly receive tips," 29 U.S.C. § 203(m), "'an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not "customarily and regularly receive tips."'" Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (quoting Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 240 (2d Cir. 2011) (quoting 29 U.S.C. § 203(m))). "'When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than 'de minimis' interaction with customers as a part of his employment.'" Salinas, 123 F. Supp. 3d at 467 (quoting Chhab v. Darden Rests., Inc., 11 Civ. 8345, 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013)).

Where, as here, an employee performs both tipped and untipped work, the question of whether an employer is entitled to apply a tip credit for minimum wage purposes

turns on whether the employee spends more than twenty percent of his or her workweek performing non-tipped work. If so, the employer is not entitled to apply a tip credit, and must pay that employee the full minimum wage. In Flood v. Carlson Restaurants Inc., 94 F. Supp. 3d 572, 583 (S.D.N.Y. 2015), the court discusses the proper application of the "twenty percent rule," which is embodied in U.S. Department of Labor guidance:

> Pursuant to 29 C.F.R. § 531.56(e), a regulation promulgated by the U.S. Department of Labor (the "DOL"), "if a tipped employee works two jobs, one in which his work customarily and regularly produces tips and one in which it does not" (e.g., where a maintenance man in a hotel also serves as a waiter), "the employee is considered employed in dual occupations, and the tip credit may not be taken for any hours worked in the non-tip-producing occupation." Chhab v. Darden Rests., Inc., 11 Civ. 8345, 2013 WL 5308004, at *2 (S.D.N.Y. Sept. 20, 2013) (citing § 531.56(e)). The regulation distinguishes this situation from "a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses," noting that "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." § 531.56(e).

> Section 30d00(e) of the DOL's Field Operations Handbook (the "FOH") addresses § 531.56(e) and affirms that an employer is permitted to apply the tip credit to a tipped employee's "time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory activities)." FOH § 30d00(e). However, § 30d00(e) also states that "where the facts indicate that . . . tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties." Id.; see also U.S. Dep't of Labor, Wage and Hour Division, Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. July 2013), available at http://www.dol.gov/whd/regs/compliance/whdfs15.htm ("[W]here a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing [duties related to the tipped occupation that are not directed toward producing tips], no tip credit may be taken for the time spent in such duties.").

Flood, 94 F. Supp. 3d at 581-82 (footnotes omitted).[2]

---

[2] The Department of Labor amended its Field Operations Handbook in 2012 to make explicit that the twenty percent test is applied to an employee's workweek, as opposed to a particular shift. Compare Wage & Hour Div., U.S. Dep't of Labor, Field Operations Handbook § 30d00(f)(3) (2016), available at https://www.dol.gov/whd/FOH/FOH_Ch30.pdf (prohibiting

In sum, the Department of Labor has opined "that tipped employees who spend a substantial amount of time, or more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." Chhab, 2013 WL 5308004, at *3 (citation omitted). "[C]ourts in the Southern District of New York have consistently endorsed th[is] twenty percent rule." Flood, 94 F. Supp. 3d at 583 (citations omitted).

## II.   ANALYSIS

Plaintiffs argue that Defendant has a common policy of paying front-of-house staff a tip-credited sub-minimum wage premised on an illegal tip pool that includes employees who perform work that does not involve direct customer service, and thus is "non-tipped" work. (Pltf. Br. (Dkt. No. 28) at 6, 8-10)

Defendant contends that the law permits employees who spend as much as 20% of their shift on non-tipped work to participate in a tip pool, and that this exception applies here. (Def. Opp. (Dkt. No. 30) at 12-18) Defendant also argues that the two proffered collective representatives (Islam and Ahmed) are not "similarly situated" to potential opt-in plaintiffs. (Id. at 19-21)

### A.   Plaintiffs Have Not Proffered Sufficient Evidence of Unlawful Practices Concerning Non-Busser Employees

In support of their motion for court-authorized notice to the putative collective, Plaintiffs have each submitted a declaration, and also submitted payroll and tip records. (See

---

employers from taking a tip credit where "tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing . . . related duties"), with Wage & Hour Div., U.S. Dept' of Labor, Field Operations Handbook § 30d00(e) (2011), available at http://web.archive.org/web/20111218014109/http://www.dol.gov/whd/FOH/FOH_Ch30.pdf (prohibiting employers from taking a tip credit where "tipped employees spend a substantial amount of time (in excess of 20 percent) performing" nontip-producing work).

Christensen Decl. (Dkt. Nos. 29)) The declarations and employment records submitted by Plaintiffs demonstrate that they worked as bussers at EN, and have personal knowledge of EN's minimum wage practices as they relate to bussers. (See Islam Decl. (Dkt. No. 29-2) ¶¶ 2-7, 11-13; Ahmed Decl. (Dkt. No. 29-3) ¶ 13; Siddiky Decl. (Dkt. No. 29-4) ¶ 15; Christensen Decl. (Dkt. Nos. 29-5, 29-6), Exs. 5-6).

Plaintiffs have proffered little information concerning non-busser front-of-house staff, however. Indeed, Islam and Ahmed's declarations contain only the following conclusory allegation concerning non-busser employees:

> All of us Bussers, Servers, Runners and Bartenders received a share of the tips from the same tip pool, in addition to an hourly wage from the Restaurant that was a sub-minimum wage tip credit rate.

(Islam Decl. (Dkt. No. 29-2) ¶ 13; Ahmed Decl. (Dkt. No. 29-3) ¶ 13) Given that Islam and Ahmed never worked as servers, runners, or bartenders, and do not explain the basis for their knowledge concerning Defendant's wage practices regarding servers, runners, and bartenders, their declarations do not demonstrate that Defendant paid servers, runners and bartenders less than the minimum wage. Accepting Plaintiffs' allegations concerning the tip pool described in the Complaint and in Plaintiffs' declarations, FLSA provisions regarding the minimum wage were violated only if Defendant applied a tip credit that resulted in runners, servers, and bartenders receiving less than the minimum wage. But Islam and Ahmed's declarations contain no non-conclusory allegations demonstrating that they have knowledge of how runners, servers, and bartenders were paid, and whether the tip credit was applied such that these employees received less than the minimum wage.

Siddiky's declaration contains an additional allegation suggesting that he may have spoken with other employees about the wages they received:

> Based on conversation I had with other Bussers, Servers, Runners and Bartenders at the Restaurant, including Bodrul Islam and Ashraf Ahmed and others, my understanding was that we all were also paid an hourly wage by the Restaurant that was at a sub-minimum wage tip credit rate, usually $5.00 an hour.

(Siddiky Decl. (Dkt. No. 29-4) ¶ 15) Given that Siddiky likewise never worked as a server, runner, or bartender, the Court finds that this vague and conclusory allegation is not sufficient to demonstrate a basis for Siddiky to assert that Defendant applied the tip credit in such a fashion as to deny servers, runners and bartenders the minimum wage that they are entitled to under the FLSA. See, e.g., Fu v. Mee May Corp., No. 15 CIV. 4549 (KPF), 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016) ("There is a 'consensus in this district that where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.'" (quoting Reyes v. Nidaja, LLC, No. 14 CIV. 9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015))); Sanchez v. JMP Ventures, LLC, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (rejecting affiant's allegation that restaurant had a common practice of FLSA violations based on affiant's observation of and conversations with other employees, because affiant did not provide "any detail as to a single such observation or conversation" (emphasis in original)).[3]

Although Plaintiffs cite cases in which courts have relied on a single affidavit in authorizing notice, (see Pltf. Reply (Dkt. No. 32) at 6-7), these cases are not persuasive, because each affiant in those cases provided more detail than is offered here. In Jeong Woo Kim v. 511 E. 5th St., LLC, 985 F. Supp. 2d 439, 444 (S.D.N.Y. 2013), for example, plaintiff alleged that he

---

[3] Plaintiffs attempt to distinguish these cases by citing the allegedly invalid tip pool. (See Pltf. Reply (Dkt. No. 32) at 7-8 ("Not one of these cases involves allegations of failure to pay minimum wages resulting from an unlawful tip pool.")) As discussed below, however, Plaintiffs' illegal tip pool theory is not sufficient to justify dissemination of notice under the FLSA.

had personally "'observed' tipped employees receiving less than the minimum wage even though . . . [they were] spen[ding] twenty percent or more of their time engaging in such 'non-tipped' activities as cleaning the restaurant." With respect to his allegation that defendant had a policy of unlawfully denying minimum wage and overtime compensation, plaintiff cited "the frequent complaints that he heard from other kitchen staff members who had been denied overtime pay and were not being compensated on an hourly basis." Id. at 444

Similarly, in Khamsiri v. George & Frank's Japanese Noodle Rest. Inc., No. 12 CIV. 265 PAE, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012), plaintiff alleged that she had personal knowledge of an illegal tip pool that included managers and employees she had observed spending more than twenty percent of their time on non-tipped duties. Likewise in Wraga v. Marble Lite, Inc., No. 05-CV-5038 JGRER, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006), plaintiff

> describe[d] conversations he observed between some . . . employees and defendant Kobe in which the employees complained that they were not paid properly for their overtime hours[,] . . . [and] provided the names of seven such employees, all of whom appear on payroll records defendants have produced thus far in discovery, and one of whom was fired by Kobe for complaining about Kobe's failure to properly pay him for overtime work.

Id. In short, these cases cited by Plaintiffs involve factual allegations more detailed than the declarations offered by Plaintiffs here.

In other cases cited by Plaintiffs, the plaintiff was seeking to provide notice to other employees who performed the same duties, and presumably received the same wages. In Sanchez v. Gansevoort Mgmt. Grp., Inc., No. 12 CIV. 75 KBF, 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013), for example, plaintiff's affidavit dealt with "'other employees who performed the same job duties that [the affiant] performed.'" And in Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 91, 96 (S.D.N.Y. 2003), the court considered the employer's

alleged illegal policy of misclassifying employees as exempt from the FLSA because of managerial status. Here, of course, Plaintiffs seek to disseminate notice to employees who hold different positions than Plaintiffs, and Plaintiffs have not provided any factual basis from which this Court can conclude that they have personal knowledge of what and how these employees are paid.

Because neither the Complaint nor Plaintiffs' submissions in support of the pending motion demonstrate that Plaintiffs have personal knowledge of (1) the wages paid to runners, servers, and bartenders, or (2) Defendant's application of the tip credit to the wages of these employees, Plaintiffs have not satisfied their burden to make a "modest factual showing" that EN's runners, servers, and bartenders "were victims of a common policy or plan that violated the law." Myers, 624 F.3d at 554-55.

> **B.      Plaintiffs Have Not Proffered Sufficient Evidence Demonstrating that Defendant Violated the "Twenty Percent Rule" as to Any Employee**

The Complaint and Plaintiffs' declarations are premised on the notion that a tip pool is invariably invalid where an employer makes tip pool allotments among workers who have performed both tipped and non-tipped work. (See Cmplt. (Dkt. No. 1) ¶¶ 15-20; Islam Decl. (Dkt. No. 29-2) ¶¶ 18, 25-26 (alleging that bussers and runners served as polishers and expeditors for some shifts, but not specifying whether any busser or runner spent more than twenty percent of his workweek on such duties); Ahmed Decl. (Dkt. No. 29-3) ¶¶ 19-21, 23, 26-27 (same); Siddiky Decl. (Dkt. No. 29-4) ¶¶ 20-22, 24, 27-29 (same)) As discussed above, however, an employer is permitted to apply the tip credit to a tipped employee's time spent in duties related to the tipped occupation – even though such duties are not by themselves directed toward producing tips – as long as the non-tipped duties do not represent more than twenty percent of an employee's workweek. See Flood, 94 F. Supp. 3d at 582 (applying DOL guidance

14

providing that tip credit issue turns on whether an employee spent more than "'20 percent in the workweek'" on non-tipped activities); Chhab, 2013 WL 5308004, at *3 (S.D.N.Y. Sept. 20, 2013) (same). Plaintiffs have cited no law to this Court suggesting that a tip pool is illegal when the members of the tip pool are all employees who spend less than twenty percent of their workweek on non-tipped activities.

Here, it is clear from the Complaint and Plaintiffs' declarations that the work of polishers and expeditors is closely related to the work of "front-of-house" personnel. The Complaint explains that expeditors "serv[e] as a liaison between the kitchen staff and Runners responsible for making sure food [is] plated correctly and at the right temperatures based on customer orders." (Cmplt. (Dkt. No. 1) ¶ 18) Similarly, according to the Complaint, polishers polish the glassware that the bussers then place on the restaurant's tables. (Id.) Accordingly, employees performing the work of expeditors and polishers perform preparatory activities closely related to the tipped work of bussers and runners.

According to Plaintiffs' declarations, Defendant employs no full-time polishers or expeditors. (Islam Decl. (Dkt. No. 29-2) ¶ 22; Ahmed Decl. (Dkt. No. 29-3) ¶ 23; Siddiky Decl. (Dkt. No. 29-4) ¶ 24) Instead Defendant "rotate[s] a Busser each night to perform Polisher work and pay[s] them tips, and rotate[s] Runners as Expeditors and pay[s] them tips." (Cmplt. (Dkt. No. 1) at ¶ 16; Islam Decl. (Dkt. No. 29-2) ¶ 18; Ahmed Decl. (Dkt. No. 29-3) ¶ 19; Siddiky Decl. (Dkt. No. 29-4) ¶ 20) Each Plaintiff avers that from time to time he was directed to work as a polisher, but would nonetheless receive tips. (Islam Decl. (Dkt. No. 29-2) ¶ 19; Ahmed Decl. (Dkt. No. 29-3) ¶ 20; Siddiky Decl. (Dkt. No. 29-4) ¶ 21) As long as the busser assigned to polisher duties for a shift spent no more than twenty percent of his workweek on this assignment, however, the alleged practice was not illegal. Employers are permitted to apply a tip

credit to such an employee as long as the non-tipped work performed by that employee does not exceed twenty percent of the employee's workweek. Salinas, 123 F. Supp. 3d at 470; Flood, 94 F. Supp. 3d at 582; Chhab, 2013 WL 5308004, at *3. As noted above, Plaintiffs have cited no law suggesting that a tip pool is illegal where it is made up entirely of employees who spend no more than twenty percent of their workweek on non-tipped work.

The Complaint and Plaintiffs' declarations do not suggest, much less plausibly allege, that any busser or runner who occasionally performed polisher or expeditor duties did so for more than twenty percent of his or her workweek. To the contrary, Plaintiffs allege that Defendant never "employ[ed] a full-time Polisher or Expeditor," (Islam Decl. (Dkt. No. 29-2) ¶ 22; Ahmed Decl. (Dkt. No. 29-3) ¶ 23; Siddiky Decl. (Dkt. No. 29-4) ¶ 24), and that instead "the Restaurant would rotate a Busser to perform the Polisher position," (id. at ¶ 18; see also Ahmed Decl. (Dkt. No. 29-3) ¶ 19; Siddiky Decl. (Dkt. No. 29-4) ¶ 20; Cmplt. (Dkt. No. 1) ¶ 16 ("Defendant would rotate a Busser each night to perform Polisher work . . . , and rotate Runners to work as Expeditors.") Given Plaintiffs' allegations that Defendant "employed over 100 Servers, Bussers, Runners and Bartenders" (Islam Decl. (Dkt. No. 29-2) ¶ 27; Ahmed Decl. (Dkt. No. 29-3) ¶ 28; Siddiky Decl. (Dkt. No. 29-4) ¶ 31), there is no reason to believe that any busser or runner spent more than twenty percent of any particular workweek performing polisher or expeditor duties.

## **CONCLUSION**

Because Plaintiffs have not pled or alleged facts that plausibly demonstrate that they and other members of the proposed collective were victims of a common policy or plan that violates the FLSA, Plaintiff's motion for leave to disseminate notice to potential opt-in plaintiffs (Dkt. No. 27) is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 27).

The Court will conduct a conference in this matter on **June 23, 2017 at 2:00 p.m.** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Dated: New York, New York  
      June 20, 2017

SO ORDERED.

_Paul G. Gardephe_  
Paul G. Gardephe  
United States District Judge